We'll call our next case, it's a companion case. It's Miller Plastics v. the NLRB and the NLRB v. Miller Plastics, 23-2689 and 23-2857. Mr. Bracken. Thank you, Your Honors. That'll be tough to follow. My first argument. Oh, congratulations. Let us know how we do. May it please the court. My name is Robert Bracken and I represent Miller Plastic Products. I would like to reserve three minutes of rebuttal.  Your Honor, I will begin with addressing the letter that we received from the court that asked us to be prepared to define the term concerted activity. As we wrote, it's not defined in the act itself. And what the act says in relevant part, employees shall have the right to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. So the word concerted, it means mutually contrived or agreed upon. Now, to be consistent with that plain language of the statute, it's our position that the term concerted activity should be defined precisely how the NLRB defined it in Myers 1, the 1984 decision. There it was defined as an employee's activity is concerted when it is engaged in with or on the authority of other employees and not solely by and on behalf of the employee himself. It's our position that is- It's really not that inconsistent. In both definitions, we looked at the purpose and you can certainly read into the Myers definition, the definition that you gave us first. And maybe I can try to get you to the all state formation of that, because it seems to me that to the extent that any articulation or statement is made in a group setting, at least opens the door to it, doesn't necessarily establish that, but it opens the door to the fact that that statement is made for the purpose of advancing, in this case, the safety or the health of the group. It doesn't require that the person organize a walkout or hand out banners or fires or anything like that, it doesn't. It does not, your honor. And the first definition that I went through was Myers 1. Myers 2 expanded upon that. And it said, just as your honor said, that in addition to those typical group activities, that also it would encompass an individual employee that brings a truly group complaint. Mr. Bracken. Yes, we have two basic issues here. The one kind of predicate or umbrella issue, and that is what do we do in the wake of Loper Bright? Yes, in this case. And secondly, then, given what Loper Bright has done, which is at least to have abandoned the Chevron test, what do we do with this statutory term, undefined in the statute, concerted activity? And yes, we had asked for counsel to supply us with possible definitions. One thing that has concerned me, well, frankly, I'd be very, very frank. What has concerned me the most is that what I've seen have been definitions that of concerted activity, or at least the concerted part of that, acting in concert as through decisions of the NLRB and as accepted by some courts, including I think one in 2016 by this court, the use of concerted in ways that semantically and etymologically have absolutely no connection to acting in concert. And if anybody wants to see what concert means, or what at least the first syllable of that word means, go to the dictionary and just run down every one of the words defined there that begins with con. And it includes, it presupposes a kind of jointer, a kind of acting together. And some of the definitions, most of the definitions we've seen do not recognize that limitation, that semantic limitation. So it may be that a more expansive view of what concerted activity is continues to stand as it has been. But I really wanted, for my purposes, to use this argument to point out that there is a long history here of using the term in ways that have no semblance whatsoever to the semantic reasons, the semantic basis of acting in concert. And I particularly am going to wanna hear from the board on that, because they have been rather back and forth. In fact, the case we have right now is a result of a reversal by the board of one of his previous cases. And of course we have a Myers one and a Myers two, and I can go through the cases I've looked at. Not exactly an example of considerable agency, consistency over the years. So how do we apply Loeb or Bright here? Because I'm not sure we do. And if we do, what do we do about existing precedents, including in this court, with the more expansive definition of concerted activity? Yes, your honor. So I believe you do apply Loeb or Bright. Loeb or Bright has given the court the opportunity to look at the actual plain language of the act and not just accept the NLRB's interpretations if they're deemed reasonable. And that's what happened in that 2016 decision before the third circuit, MCPC. And in that decision, they started off by quoting, they quoted the language that they would uphold the board's decision if it is reasonable. But you know what's really interesting about MCPC for our purposes in Loeb or Bright is it does not expressly go through the Chevron test. It does not go through the Chevron test, judge, but that statement that I just read cited to a case Mars Home versus Youth. And nowhere in MCPC do they cite Chevron, but Mars Home versus Youth, it cites Citizens Publishing, which cites another case, and eventually you get to New Jersey Bell, which is a 1991 decision, which does rely and cite specifically to, and quote, from Chevron in making that statement. But MCPC analysis seems to track the approach we use in Chevron deference cases, even though it doesn't cite Chevron. Yes, Your Honor, it does. It does, and on that basis, it concludes that this more expansive definition, not just concerted activities, mutually agreed upon activities are protected under the act, but attempts to induce conduct by an individual employee, an attempt to induce concerted activity is protected. And the statute does not provide that. Well, that's... Right, because that there's no concert yet. Yes. It's individual action. But, and this is a question that probably is better directed to Mr. Cantor, but I would like to hear your response as well. I got the sense from the board's briefing that they seem to think that somehow we might impinge on the totality of the circumstances that has been used in these cases in the past. And yet that's a standard that I don't see would be impacted in any way, my view anyway, of the result of Loper-Bright. And in fact, even a more restrictive a view of concerted activity would seem to allow for all kinds of factual scenarios that would be collective activity. Let's say one guy, Mr. Venster, stood up in this group meeting and made the complaint he did and the guy standing next to him nods his head vigorously. Concerted activity? Seems to be. Shook his hand. Seems to be. So there are all kinds of ways, all kinds of activity, even minimal, that could still give rise to a finding of concerted activity. Would you agree with that? I would absolutely agree with that, Your Honor. And look how far the NLRB in this case, applying the facts here, stretched the concept of concerted activity. You have two instances that they cite. First, you have March 16th, where Mr. Venster, he's part of this meeting, which by the way, Miller Plastic, they constantly invited questions from their employees about COVID, had PowerPoint presentations, did everything they could to protect and educate their employees about that. They have a group meeting. They say, listen, there's gonna be guidance coming from the governor. It's gonna tell us if we can stay open. Mr. Venster blurts out, we shouldn't be working. Four words. No one steps up. And if Mr. Brousseau had articulated, yeah, we shouldn't be working. If it was a truly group complaint, well, then yeah. Well, where does concert say it has to be a group complaint? Well, that even goes, that's in that second more expansive one. I'm saying that to me, and maybe I'm wrong, that to me seems like concerted activity. It's what a singular person does.   There's gotta be a plus. And there's no plus here, Your Honor. Didn't other employees approach him, express concerns about their wives and families and what was going on at Miller Plastic? No, there was an employee that went out on leave and this was after the March 16th date. He went out on leave around March 20th. There was a concern that he had COVID, but there was nowhere in the record where you find another employee identified as having shared his concern that Miller Plastic was not an essential business. The only other non-managerial employee that testified was James Bostead. He was the individual that the ALJ found was the most credible witness. That's who I mistakenly called Mr. Brousseau. Yeah, so Mr. Bostead- I just like the French last syllable of the name. Right, so Mr. Bostead, what did he say? I thought they were an essential business. I thought they were, we should stay open. I did not share that view. Nowhere in the record does he share that view, nor is any other employee identified. Furthermore, Mr. Bincer, he never even testified that he said anything at this March 16th meeting. The only evidence comes from a plant manager who happened to say, yeah, he said we shouldn't be working. And that was it. There was no, this is a case, there's no evidence of hostility or anything like that on the part of the company, not even a roll of the eyes, anything, like you see in the cases where they find taking it a step further that the concerted activity turns into a motivating factor for the decision. There was nothing like that. So we have March 16th, the NLRB now wants to expand concerted activity to include this forward break that's not joined in by anyone. So it's not concerted. Then there is a March 23rd conversation. The only person that testified about that was Ronald Bincer. And he said, as the chief operating officer, Tim Zalesko was walking past his workstation, he stopped him and said, asked him a couple of questions about the COVID policies, questions. They were not hostile questions. They were simply, what are the procedures if an employee has COVID or they come back from COVID? Mr. Zalesko, he responds, let me look into it. I'll get back to you. That's a one-on-one conversation. How in the world is that concerted activity? It's not bringing any sort of complaint. Even if you use the expanded definition in Myers 2 that MCPC adopted, it's not attempting to instigate or induce a concerted activity. And it's not a group complaint. No one else shares this complaint, Tim. So I know I've passed my time. No, that's right. Could you address the animus issue for us? Absolutely, your honor. So animus, what was the evidence of animus? There is no evidence of animus. What about the timing? Timing is the only, if you consider those two actions on March 16th and March 23rd, then there is timing, but you have to look at it in its- There were three or four other terminations, weren't there? Yes, there were. How did that time match up with the time that Vintzer was terminated? So Vintzer was terminated on March 24th, the same day as Christopher Calgar, another employee, didn't claim to engage in any protected activity. Both had received a bunch of written warnings. Both were known as poor employees. Then you have- Vintzer didn't receive a bunch of written warnings. I thought he got one. So he received three documented written warnings. They were not signed, but what the NLRB, what the ALJ concluded to get past those was that they were fabricated. Now let's look at James Bostead. We'll say he's the most credible witness because that's what the ALJ found. He said in January of 2020, he received a written warning based upon him and Ronald Vintzer talking and Bostead was moved away. He didn't sign his written warning, but he testified, yeah, I received that. Ronald Vintzer, he testified he did not receive the written warning, but I asked him based upon what was in each of those three written warnings, if he engaged in that conduct. He admitted he engaged in all that conduct. And there's actually an Eighth Circuit opinion judge that addresses this very issue. And it's called Strategic Tech Institute Inc. 87F.4900. It was decided just last year. And in that case, the NLRB did a similar thing. The written warnings, they're falsified. And in overruling the decision, the Eighth Circuit said the board cannot rely on suspicion. And that's what they did here. They also ignored, and the Third Circuit has said, NLRB cannot ignore relevant evidence. They ignored, and we listed about 10 different examples in our brief of James Bostead, the most credible witnesses testimony about Ron Vintzer being constantly warned. And by the way, Ron Vintzer admitted he had been warned multiple times. In addition to James Bostead being moved away from him on our prior occasion, Ron Vintzer testified he was moved away from another employee. The company had a practice of not following its own practice. Yes, it did. Yes, it did. And that's, you know, if you wanna just look at, okay, what do the forms say? First off, there were two competing forms. There was the employee handbook, which said we do not agree to follow any sort of basic progressive discipline. And then they had another policy that talked about progressive discipline. What they did in reality was, this is only a 40-employee company. And so what they- Most. At most. And what they did in reality was they looked at their employees, they tried to work with them. And, you know, some people received documentation. Mr. Saloom, who was terminated just a few days after Mr. Vintzer, he didn't receive a single written warning. And so it was, like you said, Judge, a company that they didn't follow an exact practice. And that was their practice. Thank you for your time. Thank you. Good morning, Mr. Cantor. Yes. May it please the court, Jared Cantor on behalf of the National Labor Relations Board. Your honors, I'll turn to, before the merits of the case, the overriding issue of Loper-Bright, which occupied much of the first part of argument. Your honors, the board's position in this case is that Loper-Bright does not impact the board's, the court's review of the board's decision. In this case, the board clarified the contours of the factual inquiry that it itself uses in assessing evidence of concerted activity. In doing so, it gave plentiful reasons why its decision in all state needed to be overturned. The board- The problem here is not a Chevron or Loper-Bright issue so much as it is evidence in the record to support a commonsensical understanding of what the word concerted means. And we don't need to get into Chevron deference that arguably you can look at this record and say, even under Chevron deference, the record here is not sufficient to support, I'm not saying I believe this, but you could make the argument that the record is not sufficient to support the board's conclusion, even if we were to apply a Chevron to it. It just seems to me, and it goes back to the question I think that a good friend and colleague, Judge Smith asked you at the very beginning, concerted has got to mean something. It can't mean something, it's gotta mean something more than a spontaneous or even a planned statement in front of folks. So if you take the same things that Mr. Vincer did on this record, and let's assume nobody was there to hear it, it was the proverbial tree that falls in the forest that nobody hears, I don't think you'd make the argument that he was trying to engage in any kind of motivation to get the employees to join him in sharing his concerns about COVID or to get the company to do something about COVID. He started adding people in the room. I'm not sure that under this record, I'm not sure how much that changes things. So maybe you can show me where that's growing. All right, I wanna make sure I answer your honor's question in the sense of your honor's concern is substantial evidence supporting the board's finding in this case. So not talking about definitions, Meyers one and two, just the facts of the case. So we're in a- He's gotta do something consistent with the purpose of the National Labor Relations Act, and that is to enhance or promote his working condition. All right, your honor. So I will answer that. So on March 16th, the board's finding of concerted activity on that date is the truly group complaint understanding of concerted activity that the board articulated in Meyers two, that this court, and as far as I'm aware, no circuit court has ever rejected that truly group complaint. MCPC, the more I read that decision, the more I love that decision and probably should have quoted from it ad nauseum in our brief because that case- Speak to the punch. Your honor, yes, yes. So the boards and council somewhat muddies the water in talking about what the board's rationales were for both of these instances of concerted activity. March 26th is the truly group complaint, Meyers two. March 23rd, March 16th. Sorry, March 16th, the group meeting, the all hands meeting. The March 23rd then is this board- Explain to us what happened on March 16th. So on March 16th, so the background facts are employees, and of course, this is, if we all remember back to this, these are day-by-day developments. Several days before this meeting, the governor declares a state of emergency in the state and things are developing day-by-day. March 15th, the governor issues this order talking about essential versus not essential or non-life sustaining businesses. There's no definition. It talks about remedial efforts to close businesses. So employees are talking about this continuously. March 16th, we have this all hands meeting. COO Zalesko talks about the safety measures the company's putting in place and why the company thinks it's essential and therefore they're going to keep the business open. BoostED's credited testimony is that before Vincer speaks up, other employees are asking and raising concerns about both, well, what are these safety measures? What are they doing? And there's also other employees raising concerns about the company staying open and asking Zalesko about, well, why do you think we're essential? So do you think that those additional comments, or maybe if they were stated first together with what Vincer says, presents the concert here pursuant to a totality of the circumstance? Yes, your honor. He's then essentially, you know, oftentimes it might be the other way around, like MCPC where the person goes first and then people chime in. Here, I think we sort of have the stronger case. Other people are- MCPC had rather weird facts, but in any event, the NLRB, and correct me if I'm wrong, it was passed, what, 1935? 35, yes. And really, its main focus was unionization, right? I mean, it allows for, as I read section seven, it allows for some individual activity save for my problem, as I've stated it, with the term concerted activity. But the real focus of the NLRB was collective bargaining, unionization. Well- Job. Respectfully, your honor, I think Supreme Court cases have made very clear this broad sweeping language that Congress put in about other concerted activities for purposes of dot, dot, dot, dot, employees mutual aid or protection. And what Congress, the Supreme Court has talked about, I believe in city disposal, and I think also in Weingarten, is that one of the chief mischiefs that the act was intended to present to ameliorate was unrepresented employees and industrial strife. And one way of doing that is through unionization. I'm not suggesting that that was not included. And my question really may not have had a very important point to it as in the big picture of this case. But as I have clearly signaled my problem with how the board and courts following the board have construed, concerted, bothers me terribly, simply because there's no rational relation to the etymology of the word. And if one simply looks at that Latin definition for con, we know what you're left with. But there's another aspect here. The board has been anything but a model of consistency over the years. And let me just go over this. I mean, in Texas, textile mills, 1944, the board found concerted activity where inter alia, the parties held group meetings and organized a union. Trailer PAMCO, the board found no concerted activity where two employees ignored instructions for where to eat lunch as there was not even the proverbial iota of evidence that there was any consultation between the two in the matter. The Alleluia decision in 1975, the board disregarded prior narrow constructions and here's where they begin to become more broadly, more broad based in their view of concerted activity. The Alleluia decision was followed then, of course, by Myers one, we get Myers two, we get world marked by Wyndham, we get Allstate, all of a sudden Allstate disappears when this case is decided. Pretty tough to understand what, I realize it's not defined in the statute. So it falls to the board to try to figure out what it means, but that's not a model of consistency, wouldn't you say? Well, your honor, I mean, those 1944 decisions are obviously quite long ago. Alleluia cushion was the board's implied theory of concerted activity. The board in Myers one overruled that and rejected that decades long rationale. Myers one articulated a definition. It went up to the DC circuit in the interim city disposal issued and the DC circuit sent Myers one back saying, we're concerned that maybe you thought your definition was commanded by the statute and it had to be so narrow. City disposal has issued the Supreme Court's language and there indicates concerted activity can be read much more broadly. Board give us, here's some questions, answer our questions, rethink about this. The board on remand from the DC circuit issues Myers two and what is Myers two have in it? It parrots some of the language of the Supreme Court and city disposal, including that loan employee engages in concerted activity when he intends to induce group action. Yeah, that's my concern. The purpose, it's not just the conduct, it's the motivation for the conduct. And maybe you can help me understand how on this record, you can establish the motivation for the conduct. The conduct seems to me is pretty nebulous in terms of whether it's some kind of quote, concerted activity or an individual who's concerned about his safety because of this incredibly horrendous disease and whether or not people around him might be carrying this disease. But if his purpose is solely, I don't wanna get sick, I don't wanna take this stuff home to my family, that's not concerted action. Even if there are a number of people in the room that hear him ask questions about the company status. Well, your honor, it's not a subjective investigation into motive because then you would have employees. Well, then it's an objective analysis of the record of what, and that's where you look at essentially what the- If the singular employee doesn't express what his motive is or even suggest that others join him in his view, how do you find any concert in that? Isn't there a danger in expanding as we do here, allowing the simple gripe, which is a word used in some of the decisions. Yes. Somehow mushrooming into concerted activity. Well, your honor, I think again, the theory on March 16th is the truly group complaint. I think it would be very hard to say that there were not group concerns about COVID, about safety precautions, about the company staying open and Boosted's credited testimony is that all of that preceded Vincent. He's essentially the cherry on top of this meeting. He's that angry blurting out. That raises a question that I hadn't thought of until just this minute, but because I assume you would agree with me that nothing here ought to interfere with a totality of the circumstances approach in deciding these cases. That is the board, going back to Myers one and two, yes, that is the standard that is applied. And I've suggested in previous questions that seems to me that there wouldn't have to be much more than this individual's statement as occurred here and somebody else joining him, indicating their assent, whatever, to establish concerted activity. But this is a special case factually. And I'm wondering if, since we all knew of COVID, its effects, the worries people had, every workplace experienced that, it might've been something that the ALJ could have taken a judicial notice of and that could have supplied the plus to the one person. Is that something that ought to be taken into consideration by us? First of all, can a court of appeals in this situation take judicial notice based on the record that we have? And if so, might that be sufficient to supply the plus to the singular action here? Well, Your Honor, that's a good question whether a court could take judicial notice of the fact that from the record here, there clearly was a pandemic. I mean, I think the record amply supports the truly group complaint theory of concerted activity on March 16th, regardless of sort of taking judicial notice. That puts the rabbit in the hat. That's not really an answer to the question that I had. And I don't know the answer to the question I had. So I was just looking for help. I mean, I guess I would say, Your Honor, of course, the board's decisions are reviewed based on the four corners of them. The Supreme Court in Chenry has made clear, I can't supply new reasoning. I think that the evidence here is quite ample. There is the credited evidence. And again, the analysis is slightly different when the theory is that the employee is the induce, initiate, or prepare for group activity. That's the sort of speaker and listener that this court talked about in mushroom transportation. But under the definitions that the board has provided us with over the years, isn't there also the ability to turn the single whistleblower into somebody who is engaging in concerted activity? Well, Your Honor, if the whistleblower was raising a truly group complaint that he talked about with other people, that too puts the rabbit in the hat. What constitutes a group activity? Well, group concern, it's the truly group complaint. That's the theory of concerted activity on March 16th, that what Vincer was doing was raising a true- Concerted modifies activity. Yes. Yeah, it's an adjective for activity. Correct. So the activity has to involve more than one person. Somehow. Well, Your Honor, the Supreme Court has clarified it does not. The Supreme Court has blessed this interpretation of concerted activity. Obviously we have the Wine Garden Doctrine, we have the Interborough Doctrine, but certainly MCPC makes clear that this board interpretation of concerted activity is, as far as I'm aware, universally sanctioned by all the courts of appeals, including this circuit. And I think because Meyers too, essentially adopted Supreme Court language. So the necessary follow-up question in the scope of this case is, does Loper Bright do anything at all to lower court's precedent? Or does it stand as a precedent just as it has before Loper Bright? I think Loper Bright was very clear that to the extent, as Your Honors talked about earlier, MCPC implicitly maybe was a Chevron case, that the holdings of cases applying Chevron are not automatically thrown out the window, that those holdings are entitled to statutory stare decisis, according to the Supreme Court, and the mere reliance on Chevron is not a reason to overturn prior cases. And we make all those arguments in our, especially our reply letter brief. What do you make of counsel's argument with respect to animus or lack thereof? Your Honor, the board provided, I believe four or five bases of animus in this case. I think they're all supported by substantial evidence, of course, being the standard, often credited evidence. Timing is the one that was talked about. If that's- The only one that was talked about. Hmm? That was the only one. That was the only one that came up. If Your Honors want me to, I mean, I know I'm over my time to talk about what our argument is on timing. It's fully set forth in the brief, but I can go into- I think we understand your position. Okay. Yeah. Unless there are any other questions, the board respectfully asks the court to enforce- This board is though, Mr. Bracken might have a question for you.  The board would ask the court to enforce. Thank you, Your Honors. Thank you, Your Honors. Judge McKee, you asked, what is the motivate- What was the motivation for Ronald Bincer's conduct in making that, what I call a gripe on March 16th?  Should that be? Should that be relevant? It absolutely is. If you're going to apply the broadened interpretation of the act as set forth in MCPC, which said you have to be engaged in concerted activity in this expanded version, it has to be done for the purpose of initiating group activity. So what was Ronald Bincer's motivation for making that forward statement? Well, we don't know because he never even testified that he made that statement. So there's no evidence of record to support the suggestion that he made that statement for the purpose of initiating or inducing any sort of concerted activity, or excuse me, any sort of concerted activity. And that was the point that I wanted to make, Your Honor. If anyone has any questions for me. Thank you very much. Thank you.